We are now ready to hear 19-4140, United States v. Egli, and counsel we are ready when you are. May it please the court, counsel for the United States, Jessica Stengel appearing on behalf of Mr. Egli. The district court plainly erred when it imposed a lifetime blanket internet ban on Mr. Egli as a special condition of supervised release. Mr. Egli did not preserve this argument below as such he proceeds under the plain error standard review. Plain error has four prongs. The first prong is error. The second, that is plain. Third, the error affects the defendant's substantial rights. And fourth, the error affects the fairness, integrity, or public reputation of judicial proceedings. The September 2019 revocation hearing was a model of clarity. The district court asked Mr. Egli about the alleged violations. He admitted them. The district court then inquired to both the government and to defense as to the recommendations of how the case should proceed. Both the government and the defense suggested Mr. Egli be sentenced to the low end of the recommended, excuse me, the advisory guideline range for this nature of violation, which was a five-month term of imprisonment, to be followed then by a term, a spell of time in a halfway house, and finally continued supervision. The government at that point noted that it was, that both it and the probation officer were eager to work with Mr. Egli and that they still both believed that he could be successful. The district court listened to the party's recommendations and then rejected them, imposing an 11-month term of custody and continued supervision, excuse me. Then there was a colloquy between the district court and probation discussing the term, the special condition of supervision that applied to Mr. Egli and his ability to use the Internet or Internet-capable devices. The exchange between them made clear that Mr. Egli was to never ever again be allowed to access the Internet or to use any Internet-capable device throughout the term of supervision, which is the term of his life. If there was any confusion, the subsequent judgment that issued enlisting the special conditions of supervision made clear the very first condition of supervision stating the defendant shall not access the Internet. The defendant is prohibited from possessing or accessing any Internet-capable devices for the term of supervision, which again is Mr. Egli's life. Let me ask you a question. Notwithstanding that language, if a couple of years down the road, Mr. Egli wanted to petition the court for a revision of those conditions of supervised release, did the district court have the authority to grant that petition and modify the conditions? My understanding is yes, if the district court was so amenable. But in the meantime, between now and if that ever happens, Mr. Egli cannot use the Internet or any Internet-capable devices. And that is plain error under this court's published jurisprudence. We have said that if the condition were you can't use the Internet unless the supervised release officer approves, should that be treated any differently than a statement that you can't use the Internet unless I later approve it? Fundamentally, you're... sorry. I mean, would it be different? Should we have two different kinds of laws on what's sufficient? If the condition were you can't use the Internet unless the supervised release officer approves, should that be viewed differently than a condition if it were explicit, saying you can't use the Internet until and unless you petition me to revise that statement? No, Your Honor. And I don't believe that this court's published cases would support a disparate reading based on which authority ultimately grants or denies the defendant the permission to use the Internet. It is the act itself of denying the Internet. Because quite frankly, even if the probation officer wants to give Mr. Egli, let's say, more permission, more liberties with the Internet, it can't. And there's nothing to say that this court could... excuse me, the district court could. It is the fundamental nature of the condition in that it is a blanket Internet ban. It seems... and this court has made quite clear that a special condition that gives probation discretion to ban a defendant's use of the Internet involves a greater deprivation of liberty than is necessary to achieve the goals, excuse me, of supervision. Is there ever a time when a defendant's continuing violations of the court's imposed restrictions on Internet use could actually justify a complete ban? I mean, you can certainly understand why the district court here was frustrated. I can absolutely appreciate the district court's frustration, yet it demonstrates that the conditions on Mr. Egli at the time, which were not a blanket ban, clearly were. This is sadly but true. This is the example of how effective supervision works. Now, notably, the government nor the district court made such a finding that Mr. Egli's conduct that brought him back into court was so severe, and he represented the most extreme case to justify a lifetime blanket Internet ban. There may indeed be cases... And you're... so if there were such findings, you think that in some circumstances the violations could be egregious enough to justify a complete ban with a specific finding for those purposes? Your Honor, actually, I do not. I think there may be instances in which specific defendants and specific courses of conduct may justify incredibly broad Internet bans, but given how vital the Internet is to functioning in modern society, I do not believe ever a blanket Internet ban, especially for the term of life, is ever appropriate. Well, but the Tenth Circuit has clearly said that there could be special situations when it would be appropriate. I mean, so that's kind of contrary to our law. The Tenth Circuit has noted that there may be extraordinary circumstances or the most extreme case in which extraordinarily broad bans may be tolerable. It mentions neither a complete Internet ban nor the length of term of supervision. And quite frankly, it seems difficult to reconcile completely putting a defendant into exile, as this is what an Internet ban does at this point in our world, for possessing an unauthorized computer or for looking at sexually explicit material that must otherwise be lawful. Quite frankly, otherwise, the government would have brought in charges. They've done this before, and it wouldn't make sense to do it again. And given that the error in banning him is plain from this case, this court's published cases, which the controlling case is Blair, we move then to the third problem, which is does the error affect the defendant's substantial rights? There's a lot of great language out there from other cases about defendants not being able to use the Internet for benign activities like filing taxes or getting a weather report. And there is no undercutting, of course, of that argument. The most compelling example, though, of Mr. Edley's substantial rights being affected is happening right here, right now, as I'm speaking. Mr. Edley can't access the Internet. He can't participate in his own case. If he wanted to listen to this argument, he would have to live stream it on this court's YouTube channel. YouTube is either an application on a phone or it's a website, and he can't use that phone or access the website. Or perhaps Mr. Edley doesn't want to listen to it now. It's too angst-inducing. Maybe he wants to listen to this later. How does he do this? This court publishes recordings of oral arguments on its website. Again, Mr. Edley, by the nature of this ban, is barred from participating in a court proceeding in which his fundamental liberty is at stake. And this, quite frankly, seems to answer the fourth problem of how an error that is plain, that would be allowed to stand, would not affect the integrity, fairness, or public reputation of judicial proceedings, in that it bars a defendant from participating in his own defense. If there are no further questions, I will reserve time. Thank you. You unmuted without being asked. Thank you. You're welcome. Good afternoon, and may it please the court, my name is Jennifer Williams for the United States. Mr. Edley has two federal convictions for possession of child pornography and four supervised release violations, all involving unauthorized use of the Internet and computers and the viewing of sexually explicit materials. The district court time and again imposed less restrictive supervised release special conditions, but finally, after numerous repetitive conduct in violation of the court's order, the district court finally, with no other options, gave him a lifetime Internet ban. Although he did not challenge this ban at the time it was imposed, he now tries to challenge it for the first time on appeal. Our first argument is that because he affirmatively abandoned this challenge to the Internet ban at his final supervised release revocation hearing, he cannot now challenge it on appeal. You're arguing forfeiture here. We're arguing waiver. I'm sorry, you're arguing waiver here, and the way you're doing that is you're combining two hearings that occurred at different times, arguing that because they're represented by the same counsel, that we can assume that it was a knowing and voluntary waiver in the second hearing. Is that your argument, essentially? That is essentially our argument. What this court looks at in determining whether it was a knowing abandonment of the argument, it looks to the record, and the prior hearing in June 2019 is clearly a part of the record in this case. Well, it's part of the record, but it's a separate stand-alone proceeding, and the second hearing was dealing with violations of supervised release that occurred after the first hearing, correct? Yes, that's correct, and I want to make clear we're not arguing any kind of res judicata or estoppel. The only question for the court is counsel's intent in not raising it at the final hearing, and the fact that the same counsel did raise it, and it was extensively discussed at the hearing just three months earlier, is evidence of Mr. Eggley and his counsel's intent not to raise it at the final hearing? It would be equally evidence that he just forgot, or when you read that transcript, you realize how concerned everybody was with where Mr. Eggley would be sentenced, what location, and they immediately moved to that as the primary focus of that hearing. That would be an equal explanation that they were focusing on something else that was urgent for him, and he just forgot. I can't even imagine a reason why he otherwise wouldn't have objected since his prior objection was successful. So, if the record is agnostic, we just have to try to read the tea leaves or the crystal ball. There's at least as many tea leaves or more tea leaves on the grounds of non-forfeiture than there is of forfeiture. The fact that he raised it at the prior hearing filed a motion on it. It was then extensively discussed at the hearing. It was clearly a very important issue to him just three months earlier, and then at a hearing three months later, the district court makes clear that it's going to impose a total Internet ban, and on this record, it's very hard to see how his counsel could have simply forgotten something that was clearly very important just a few months earlier. Well, if we're going to collapse the two hearings and treat him as one, hasn't he done enough to make it very clear that he objects to a lifetime ban of all computers? I mean, I don't think you get to pick and choose and say, we're going to charge you with the knowledge from that hearing, but we're not going to give you credit for raising the issue. Well, that's why I wanted to distinguish our argument. It is, again, not a claim that he was somehow bound by what he raised at the prior hearing or that the prior hearing had some sort of determinative effect on the last hearing. It's only relevant as it goes to his counsel's intent and whether she simply forgot to raise it, which on this record is sort of unbelievable given the extensive discussion about it only three months earlier or whether she made a deliberate decision perhaps to focus on less jail time for her client to not raise it at this hearing. Ms. Williams, if we don't agree with you and we treat this as a plain error review, don't you have to admit that there's error here and it was plain? No, we don't. Okay. We agree with Mr. Egley that in this circuit, the determinative case is Blair, and Blair makes an exception for extreme circumstances. And the combination of under Blair, the question is whether it was plain error. This is not an abusive discretion standard as it was in Blair. So the error has to be plain. And in this case, it's not because Blair left open a scenario under which a lifetime Internet ban could be permissible under extreme circumstances. And our position is that this case presents such extreme circumstances. Would you read Blair as saying that you could do that without making specific findings supporting your decision to take that extreme position? Well, I'd like to make a couple of points. First, as Mr. Egley concedes in his reply brief, he did not argue that the district court's findings were not sufficient. And he can't raise it for the first time in his reply brief, and he doesn't attempt to. He just notes that he didn't take the argument. On that quick question, we have addressed that in the past occasionally by saying that is of interest not only of the parties, but of the appellate reviewing court as well. And there are cases that even though the party didn't raise it, we, as an appellate court to review abusive discretion, have an independent interest in ensuring that there's an adequate record for us to give a good review. Yes, although I would just point out again that the court's review is for plain error in this case, not abusive discretion. And what the court is looking at in this case, because this case does involve not just the latest supervised release hearing, but all the supervised release hearings that came before, the two convictions, all of which are part and parcel of they all led to this final supervised release hearing. And this court can look at what the district court said in the final hearing, but it can look at that in the context of everything that came before. So the district court had before it the two convictions for possession of child pornography, details about the four supervised release violations, all of which involved sophisticated, not just use of the Internet and computers, but sophisticated use of the Internet and computers. So downloading unauthorized virtual private networks, asking, although he didn't receive it, but asking for a personal computer to mine Bitcoin. All of that indicates someone who is a sophisticated computer user, and who has been given chance, chance after chance to comply with less restrictive Internet restrictions, and who demonstrated time and time again, a lack that he lacked the self control to so comply. And the record shows that in the 10 or so years prior to his final supervised release violation, I think he went, he was incarcerated for eight of those years, but he went about three months. That was the most he went without violating his supervised release. And all of that evidence was was clearly before the district court at the final hearing. And so we did, I'm sorry, go ahead, judge eval. Well, I was gonna say there's a psychological evaluation in there about him increasingly becoming unmanageable in terms of sexual matters, I think. Yes, that was brought, it was a 2017 evaluation, and it was brought to the attention of the district court at the June 2019 revocation hearing. So even though it was an earlier evaluation, it was brought to the court in this particular sentencing? Well, it was in 2017, when he was still incarcerated, he was released in 2018. And then shortly. Was that was that part of the sentencing record in this case? Was it referenced? Well, this case includes the... No, I mean, in this proceeding, not this case, but in this proceeding, in this sentencing, where these conditions of supervised release were imposed, was that psychological report argued or referenced in connection with that, with the determination of supervised release conditions here? Well, I don't believe there was additional briefing before the final supervised release hearing, but there was there was some reference made to this being a continuation of violative activities. And the same district judge, right? It was the same district judge, it was the same counsel, and this hearing occurred at most three months after the prior hearing. And so it's clear from the record, and it's clear from the transcript that all the parties viewed this as a continuation of the prior hearing, which had occurred just a couple of months earlier. Which is presumably why the district court did not feel it necessary to conduct a whole separate hearing, because all of this had been discussed. And all of this evidence had been submitted just a couple of months earlier. So what the district court had before was all... Then you have Judge McHugh's, I think, observation that you can't have it halfway. I mean, if you're going to refer to the prior proceeding, you got to consider that the objection was made in the prior proceeding. Well, our only point with regard to the question of waiver is whether counsel's intent at the final hearing can be inferred from what she did or didn't do at the prior hearing. And actually, our position is the same here, that what happened at the prior hearing is relevant to what happened at the final hearing. It's part and parcel of the same overall proceeding. And I guess the problem that I have, I mean, we did, I think in Ullman and in Blair, suggest that there might be a case that is so egregious that it may be appropriate to have a special condition of a total internet ban. But we certainly held that out as something that would be extraordinary. And in the absence of specific findings, you're asking us to infer what was going through the district court's head when the district court took this extraordinary measure. Now, I read through that record, and if I were the district court, I'd be ready to throw up my hands, too. But being an appellate court, we typically need to have direction and guidance when there's a sentencing issue or a revocation issue, a special condition that is out of the ordinary to the extreme. And I'm feeling as if we don't have that here. might not stand as providing sufficient reasons for such a ban. But the final hearing did not occur in a vacuum. And the record that and the reason it didn't occur in a vacuum, and perhaps the reason that the district court did not make more extensive findings at the final hearing is that they had these same parties, the same attorneys, same judge had just gone through a quite extensive process three months earlier. Where these same issues were discussed, and where the 2017 psychosexual evaluation was submitted. And at that hearing, the district court tried again to give Mr. Egli a break, he asked for a personal computer, she gave him a personal computer. And three months later, he again, well, actually, the hearing occurred three months later. So I think it was about three or four weeks later, he again violates. And he violates before he even had a chance to use his personal computer. He tried to search a pornography words using the work search computer at the halfway house. And so from the record as a whole, it's the district court clearly felt like it had no other choice, but to impose this admittedly very restrictive total internet ban. And I would just one more time point this court to the standard of review, which again, that the holding we're asking for is narrow in this case, because it's a plain error. And so the question is whether in light, I see my time has expired. You can finish answering that. Whether in light of this court's precedent, in particular Blair, it was plain error for the district court to impose this total internet ban. Thank you, counsel. Thank you. And I believe Ms. Stengel that you have five minutes and 32 seconds. Just a few points, your honors. The government's position today is a 180 degree turn from what they, the position it staked out at both the September 2019 hearing and the June 2019 hearing. In both instances, despite Mr. Eggly clearly pushing the limits of an effective condition of supervision because he got caught. The government repeatedly suggested that it wanted to work with him. At the June 2019 hearing, the government said, I wish we were not in such an oppositional situation. The probation office wants to work with him. They, everyone still believes there is a chance for Mr. Eggly to succeed. Moreover, what the government is further asking this court to do is something that it did not argue for in September or June, not that the June hearing really has any bearing on this. Or that the district, the government asked the district court to do was to find that Mr. Eggly represents that extreme end of the spectrum such that he is barred from the internet for the rest of his life. There is nothing that justifies exiling a man or a woman, a defendant from participating in modern life. Chief Justice John Roberts in 2018, two and a half years ago, noted about cell phones and the services they provided, that they have become such an insistent and pervasive part of daily life that carrying one is indispensable to participating in modern society. And even then in 2018, he was referencing a case from 2014. So, in the course of six years, it fails to reason that something that was indispensable to participating in modern life is going to be denied to someone that everyone collectively is attempting to reintegrate into society. What do you suggest a district court does in a situation where over and over again, they set, they gradually set tighter limits on the use of the computers and no matter, they just keep being breached. All of the conditions are breached and you know that there are searches and things that raise concerns about injury to third parties. There seems to be a leap of some magnitude that is required to go from an internet search to injury of third parties. And I think the cases, the extra circuit cases that the government provides makes that very clear in which those defendants were actively using the internet. I think the courts described it as outbound use of the internet to find kids, prey on kids, lure them to meeting places to sexually victimize them. So, searches to me are, it could just be boredom, like this man doesn't have a broad spectrum of interest yet. Now, in terms of a court's frustration with repeated violations, that is understandable. And at some point, it seems to be in the court and the executive branch's best interest in terms of use of resources is to cut him loose. Because if he is truly this unmanageable, he will likely violate a law of the United States rather than repeatedly coming in unsupervised for these violations. If they cut him loose, what do you mean? Stop supervising him? Yes, Your Honor. Stop supervision. And wait for him to successfully contact an underage victim? In this case, Mr. Edley never contacted anyone underage. Mr. Edley's crimes were downloading and possessing child pornography. He did not make outbound use of the internet to find kids. You could argue that that's a victim. Child pornography absolutely has victims. There is no question. Thank you. I cannot, I'm sorry about that. It's the way the government, it's a comparison. And I believe it was the Second Circuit, may have even been the Fifth Circuit, which is shocking to me to believe, that distinguish between those that download and possess child pornography versus those actors who use the internet as a tool to find, cultivate, and ultimately complete the goal of their saving desires. I don't know how else to say this. I apologize. No, the government is adept at monitoring distribution networks. And if Mr. Edley or any other defendant who likes to go online and find this thing, they will find him, I have no doubt. Rather than continuing to waste probation's time, especially a probation officer that wants to work with him and thinks that there is potential. And based on that alone, this court does not have a sufficient record to find to make the decision that the district court is tasked with making in that Mr. Edley might represent the most extreme case. I see that I'm out of time. I would submit that the case should be reversed and remanded with special instructions. Thank you. Thank you, counsel. We will take the matter under advisement. We appreciate your argument today. And you are excused.